IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARY F. O'GRADY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 09 C 2539 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| COMMONWEALTH EDISON COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Mary F. O'Grady filed charges against defendant Commonwealth Edison Co. in

the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging that defendant

discriminated against her based on her age and sex in violation of the Age Discrimination in

Employment Act ("ADEA"), 29 U.S.C. § 291 *et seq.*, and Title VII of the Civil Rights Act of

1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*. The EEOC issued plaintiff a Notice of Right to

Sue and plaintiff filed the present suit within the ninety-day limitations period. Defendant has

moved for summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons stated below, the

court grants defendant's motion for summary judgment.

## BACKGROUND

Defendant hired plaintiff as a probationary meter reader in defendant's Joliet, Illinois

office on October 29, 2007. In her first week of employment, plaintiff received five days of

training on reading meters. Over the next eight workdays, plaintiff accompanied veteran meter

readers on their routes, observing them read meters and reading some herself. After this training

period, plaintiff began reading meters on her own.

Plaintiff began a typical day by arriving the Joliet office, attending a safety meeting

conducted by meter reader supervisor Bruce Douglas, and obtaining her "book" for the day and

keys to a company car.  The "book" was a handheld computer containing plaintiff's route for the day.  Plaintiff would input the numbers from a meter into the "book," which would then be uploaded into a computer in the office.

Defendant presents records of these entries showing that plaintiff made several errors and read meters at a rate well below other probationary meter readers during her probationary period.  Plaintiff argues that these records should not be considered because they are inadmissible hearsay or not founded upon personal knowledge.  Alternatively, plaintiff offers several explanations for her poor performance.  First, she lists several unforeseen circumstances including weather conditions, unchained dogs, and locked gates.  Second, plaintiff argues that she did not receive as much overtime as younger, male probationary meter readers.  Third, plaintiff notes that other probationary meter readers would receive their "books" back from the previous day.  She believes that this decreased her scores in comparison to her colleagues' scores.  Fourth, plaintiff argues that Douglas assigned her random jobs and errands that took her away from her meter-reading duties.  Defendant does not contest these facts.

After plaintiff's first thirty, sixty, and eighty days of work, Douglas reviewed her performance, as well as the performances of the other probationary meter readers.  Douglas rated probationary meter readers on scale from one to four – four being the best score – in eight categories, including "Quality of Work/Reading Accuracy."  Plaintiff's scored substantially lower than other probationary meters readers, especially in the "Quality of Work/Reading Accuracy" category, where she received a score of one for each review period.  Plaintiff contends that she never received any of the results from these reviews, but admits that Douglas told her that she received a poor score after her sixty-day review.  Douglas told her she would

need to perform better or she would not pass the probationary period.  Plaintiff then asked

Douglas to retrain her so that she could perform better, which he said he would.  Douglas never

fulfilled this promise.  On January 24, 2008, Douglas terminated plaintiff, stating, "The only

thing I could get you on was your percentage of meters read."

## DISCUSSION

Plaintiff objects to several statements in defendant's Local Rule 56.1(a) Statement of

Material Facts.  Plaintiff alleges that the business records relied upon by defendant to

demonstrate plaintiff's poor performance are inadmissible hearsay and lack foundation, and that

several statements in Douglas's affidavit are not based on personal knowledge.  Thus, plaintiff

argues, those facts cannot be taken into consideration in support of defendant's motion for

summary judgment.

Affidavits and other documents used to support a motion for summary judgment must

contain information that would be admissible at trial.  *Judson Atkinson Candies, Inc. v. Latini-*

*Hohberger Dhimantec*, 529 F.3d 371, 382 (7th Cir. 2008).  Defendant's business records are not

hearsay, however.  A statement is hearsay only if it is used "to prove the truth of the matter

asserted."  Fed. R. Evid. 801(c).  Therefore, if defendant uses the records to prove the effect they

had on Douglas's review, not plaintiff's poor performance, they are not hearsay.  *See Stewart v.*

*Henderson*, 207 F.3d 374, 377 (7th Cir. 2000) (finding statements used by other hiring

committee members admissible for summary judgment because they were used to prove the

effect on the decisionmaker); *Cotter v. Village of Maple Park*, No. 04 C 1794, 2006 WL 218161,

at *2 (N.D. Ill. 2006) (finding statements between police officers admissible in 56.1 statement to

prove effect on listener).  Defendant's use of the business records to show that Douglas believed

3

plaintiff was performing poorly and that Douglas made his termination decision based on these records is permissible under Fed. R. Evid. 801(c).

Even if defendant uses plaintiff's work records to prove the matter asserted, that plaintiff actually performed poorly, the records are still admissible as an exception to hearsay under Fed. R. Evid. 803(6). Rule 803(6) states that business records are admissible to prove the truth of the matter asserted if "a custodian or other qualified witness" can certify that the record is compiled in the course of "a regularly conducted business activity" and that it is "the regular practice of that business activity to make the . . . record . . . ." The "custodian or other qualified witness" need not be the individual that actually compiled the record, however. *Thanongsinh v. Bd. of Educ.*, 462 F.3d 762, 777 (7th Cir. 2006). Rather, the custodian must "be familiar with the company's recordkeeping practices." *Id.* (quoting *U.S. v. Jenkins*, 345 F.3d 928, 935 (6th Cir. 2003)). For purposes of summary judgment, the party seeking to use the business record must merely demonstrate that the evidence contains "sufficient indicia of trustworthiness to be considered reliable." *Id.* (quoting *Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000)).

In the instant case, Douglas qualifies as a "custodian or other qualified witness," as mandated by Rule 803(6). In his affidavit, Douglas lays out how records of a meter reader's performance are created: "The meter reader enters each meter reading into the handheld [computer] and that information is downloaded into the Company's computers at the end of the day." Moreover, Douglas's position as supervisor of the Meter Reading Department of Commonwealth Edison required him to use the computer printouts for performance reviews of probationary meter readers like plaintiff. Clearly, Douglas is familiar with defendant's recordkeeping practices because he is familiar with both how the information is generated and

how the information is transmitted to him. Therefore, defendant's business records are admissible as an exception to the hearsay rule.

Plaintiff also challenges several assertions in defendant's Local Rule 56.1(a) Statement of Material Facts as not being based on personal knowledge as required by Fed. R. Civ. P. 56(e)(1). Also, because evidence in support of a summary judgment motion must be admissible at trial, the affidavits must also satisfy Fed. R. Evid. 602: "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may . . . consist of the witness's own testimony."

Plaintiff objects to paragraphs 7 through 14 of defendant's Local Rule 56.1(a) Statement, arguing that those paragraphs contain evidence outside the personal knowledge of the witness. These paragraphs come from Douglas's affidavit and relate to the day-to-day activities of meter readers, the contents of the collective bargaining agreement between defendant and the meter readers' union, and the process of reviewing meter readers' performance. As the meter reader supervisor for defendant's Joliet office, Douglas has personal knowledge about all of these matters, particularly the performance reviews at issue, which Douglas performs himself. Therefore, plaintiff's objections as to Douglas's lack of personal knowledge to support these matters are unfounded.

Having rejected plaintiff's objections to defendant's 56.1(a) Statement of Material Facts, the court will now address the substance of defendant's motion for summary judgment. Under Fed. R. Civ. P. 56(c)(2), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any

material fact and the movant is entitled to judgment as a matter of law." The initial burden is on

the moving party to demonstrate the absence of issues of material fact. *Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986). If the moving party can do so, the burden shifts to the non-moving

party to "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). In

deciding a motion for summary judgment, the court construes all facts in a light most favorable

to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

In a Title VII or ADEA case, the plaintiff may establish unlawful discrimination through

either the "direct" or "indirect" method. *Atanus v. Perry*, 520 F.3d 662, 671 (7th Cir. 2008).

Under the direct method, the plaintiff must present evidence that "points directly" to

discrimination, whether such evidence is direct or circumstantial. *Id.* For example, in *Kodish v.*

*Oakbrook Terrace Fire Protection Dist.*, 604 F.3d 490, 501 (7th Cir. 2009), the court found that

an employer's statement that he did not like the plaintiff's pro-union stance was direct evidence

of discrimination.

By contrast, the indirect method requires that the plaintiff demonstrate four elements to

establish a prima facie case of discrimination: 1) the plaintiff belongs to a protected class; 2) the

plaintiff performed his or her job according to the employer's legitimate expectations; 3) the

plaintiff suffered adverse employment action; and 4) similarly situated employees outside the

protected class were treated more favorably by the employer. *Atanus*, 520 F.3d at 672. If the

plaintiff succeeds in establishing the prima facie case, a presumption of discrimination arises and

the burden shifts to the employer to provide a "legitimate, noninvidious reason for its actions."

*Id.* If the employer can rebut the prima facie case with such a reason, the burden shifts back to

the plaintiff to show that the proffered reason is a pretext for discrimination. *Id.*

Plaintiff fails to present any direct evidence of discrimination. Rather, plaintiff alleges: that Douglas did not retrain her after promising to do so; that she did not receive the same book back from the previous day while younger, male meter readers did; that she was required to help male co-workers with their duties; that the Human Resources manager failed to call her back; that she was never given test results that formed the basis of her termination; and that Douglas told her, "the only thing I could get you on was your percentage of meters read." None of these facts, when viewed in a light most favorable to plaintiff, point directly to a discriminatory intent on the part of defendant. Certainly, none of these actions or circumstances resembles the statement in *Kodish* that the employer did not like the employee supporting union activities. In fact, there is no evidence that defendant disfavored plaintiff at all, let alone because she was female or older than other probationary meter readers.

Further, plaintiff fails to establish the second element of the prima facie case of indirect discrimination: that she was performing her job up to defendant's legitimate expectations. Expectations are "legitimate" if they accurately reflect the employer's true expectations. *Duncan v. Fleetwood Motor Homes of Indiana, Inc.*, 518 F.3d 486, 491 (7th Cir. 2008). They are not legitimate, by contrast, when the are "phony." *Coco v. Elmwood Care, Inc.*, 128 F.3d 1177, 1179 (7th Cir. 1997). Without doubt, defendant's expectations are legitimate. Defendant trained plaintiff for two and a half weeks on how to read meters. Moreover, the records produced by defendant demonstrate that other meter readers' statistics on accuracy were also recorded. Defendant clearly placed great importance on the ability of its meter readers to read meters efficiently and effectively. Therefore, this is not an illegitimate, or "phony," expectation.

The records submitted by defendant also clearly demonstrate that plaintiff read meters at a level well below those legitimate expectations. According to these records, plaintiff read 56.2 percent of meters in November 2007, 56.1 percent in December, and 58.7 percent in January. At her performance reviews, Douglas gave plaintiff the lowest rating possible for "Quality of Work/Reading Accuracy." The lowest percentage read by her fellow probationary meter readers in any month was 61.2 percent. That employee then increased his percentage of meters read to 86 percent the next month and 94.5 percent in the next. Douglas's affidavit also states that defendant expected probationary meter readers to read eighty-five to ninety percent of meters by the end of the sixty-day period. Because this evidence demonstrates that plaintiff was not meeting her employer's legitimate expectations, defendant has not meets its initial burden of showing a lack of material fact as to this element of plaintiff's prima facie case of unlawful discrimination. Therefore, the burden shifts to plaintiff to "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

To create a genuine issue of material fact, plaintiff alleges numerous facts suggesting that she was given no indication that she was performing poorly. Plaintiff alleges that Douglas offered to retrain her but never did. Also, she argues that she was never provided with the records that provided the basis for her termination. Regardless of the fact that plaintiff admits that Douglas told her she was not meeting expectations, these assertions do not create a genuine issue as to whether plaintiff was performing to defendant's legitimate expectations. Whether plaintiff believed that she was doing a good job, or that she was not given evidence of her poor performance, says nothing about plaintiff's actual performance. *E.g.*, *Sanders v. Norfolk Southern Ry. Co.*, 39 Fed. App'x 414, 416 (7th Cir. 2002) ("[Plaintiff] responded with nothing

more than her unsubstantiated opinion that she was qualified for the position, and that is not

enough to create a genuine issue of material fact and avoid summary judgment"). Plaintiff

presents no evidence that she received positive ratings or accolades during her tenure. *See*

*Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 743 (7th Cir. 1999) (finding that employee met his

initial burden of showing that he was meeting his employer's expectations by producing

"consistently positive employment evaluations" and a letter of recommendation from his

employer). Rather, the evidence, when viewed in a light most favorable to plaintiff, still leads to

the conclusion that she was not meeting defendant's legitimate expectations for probationary

meter readers.

Next, plaintiff asserts that several reasons outside her control negatively impacted her

performance: she had to move slowly to avoid safety hazards such as weather, gates, and dogs;

that she did not receive overtime; she was unable to complete her routes from the previous day

because she did not receive her "book" back from the previous day; and Douglas had her run

errands that took her away from reading meters. None of these assertions creates a genuine issue

of material fact as to whether plaintiff met defendant's legitimate expectations. First, as to

unforeseen circumstances such as weather or gates, these circumstances would presumably affect

all meter readers equally; this evidence does not show that these circumstances disadvantaged

plaintiff in relation to other probationary meter readers.

Second, Plaintiff's allegations regarding overtime do not withstand scrutiny. Defendant

presents records demonstrating that no probationary meter reader except two received any

overtime in his or her first forty-five days of employment. Even then, those employees that

worked overtime worked only three-and-one-half hours of overtime combined. Moreover,

Douglas's affidavit states that probationary meter readers were not given overtime until they proved themselves in the field. Plaintiff does not rebut these assertions in any way; rather, she merely restates the fact that her contemporaries received more overtime. Therefore, she fails to create a genuine issue of material fact as to the second element of a prima facie case of discrimination because of the other employees' overtime.

Third, plaintiff argues that, because she did not receive her "book" back from the previous day, she could not complete her routes and her performance was impacted. Plaintiff further contends that she was the only probationary meter reader that did not receive her "book" back the next day. Presuming this contention to be true, this should not have affected her overall performance. If plaintiff devoted time to completing her old routes, she would not start her new route until later in the day. Thus, her new route would suffer at the expense of the old one, and her performance would be equally poor. Plaintiff does not argue that she ever finished early, which would have allowed her to return to her old routes. She does not dispute that she never asked for her "book" back. Moreover, Plaintiff fails to present any evidence as to how this practice would impact her performance, other than her subjective understanding of the process. Plaintiff's response to defendant's 56.1(a) Statement of Material Fact states, "Plaintiff believed that the percentage of meter readings were [*sic*] directly related to completing the 'book.'" This subjective belief fails to create a genuine issue of material fact as to plaintiff's performance.

Fourth, plaintiff argues that her performance suffered because Douglas assigned her odd jobs and errands that took her away from reading meters, including assisting male meter readers with their routes. Plaintiff and defendant agree that Douglas sent her on two errands, totaling two hours and forty-five minutes. Two hours and forty-five minutes over the course of three

months does not explain plaintiff's underperformance.  Also, plaintiff admits that Douglas split

her routes on days she helped other readers, so that she had to read only half of the meters she

would normally be expected to read.  Thus, plaintiff fails to sufficiently rebut defendant's

evidence of her failure to meet defendant's legitimate expectations, and no genuine issue of

material fact exists regarding that element of plaintiff's prima facie case for sex and age

discrimination.

**CONCLUSION**

Because plaintiff fails to establish the prima facie case for either gender or age

discrimination under Title VII or the ADEA, defendant is entitled to summary judgment.  *See*

*Oest v. Ill. Dept. of Corrections*, 240 F.3d 605, 610 (7th Cir. 2001) ("[I]f the nonmoving party

fails to make a sufficient showing on an essential element of her case, the moving party is

entitled to judgment as a matter of law . . . .").  Therefore, for the reasons discussed above,

defendant's motion for summary judgment is granted.

**ENTER:       October 19, 2010**

_____
          **Robert W. Gettleman**
          **United States District Judge**